Tagged for publication



**ORDERED in the Southern District of Florida on November 18, 2015.**

_John K. Olson_
John K. Olson, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**In re:**    Case No. 13-11065-JKO
         Chapter 11
**ANNA MARIE SANDERS,**

   Debtor.
_____

## ORDER ON MOTION TO RECUSE

This dismissed Chapter 11 case is before the Court on the Motion (the "Recusal Motion") [ECF 290] filed on January 29, 2015, by the Debtor and her counsel, Tina M. Talarchyk, seeking an order of recusal of this judge pursuant to 28 U.S.C. §§ 455(a) and (b), 28 U.S.C. § 144, and the Code of Judicial Conduct for United States Judges, Canons 2 and 3.

### Background

The Debtor filed her case on January 17, 2013. She has been represented throughout the case by attorney Tina M. Talarchyk who appeared through three different law firms during the course of the representation. In her application to be retained as Debtor's counsel through her then-firm,

Talarchyk Merrill, LLC, (the "Retention Application") [ECF 17], Talarchyk stated under penalty of perjury that

> 18. .... TALARCHYK MERRILL will retain all remaining amounts of the Retainer in trust during the pendency of this case to be applied to any professional fees, charges and disbursements that remain unpaid at the end of this Chapter 11 Case.
>
> 19. TALARCHYK MERRILL will provide the Debtor with periodic (no less than monthly) invoices for services rendered and disbursements incurred. During the course of this Chapter 11 Case, the issuance of periodic invoices will constitute requests for interim payment against the total reasonable fees and reimbursable expenses to be determined at the conclusion of this Chapter 11 Case. **Interim and final payments are to be made on account of such invoices only in accordance with orders of the Court.** [Emphasis added.]

*Affidavit of Tina M. Talarchyk in Support of Application of the Debtor for Entry of an Order Authorizing the Retention and Employment of Talarchyk Merrill, LLC as Attorneys for the Debtor-in-Possession* nunc pro tunc [ECF 17, page 21 of 23].

Although a Chapter 11 Plan [ECF 207] and Disclosure Statement [ECF 208] were filed, the Debtor withdrew both [ECF 220] and moved to dismiss the case [ECF 219] after objections were filed to the Plan [ECF 215] and Disclosure Statement [ECF 218]. The case was dismissed by Order (the "Dismissal Order") [ECF 225] entered March 10, 2014. The Dismissal Order was drafted by Talarchyk and contained the following two relevant decretal paragraphs:

> 4. This Court shall retain jurisdiction to review fee applications of professionals in the instant case.
>
> ***
>
> 6. The Debtor shall not pay any professionals without further order of Court.

The Court was accordingly required to consider the various fee applications filed by other professionals in the case [ECF 231, 232, 233] and by Talarchyk on behalf of Talarchyk Merrill, LLC [ECF 234] and The Talarchyk Law Firm [ECF 235]. The United States Trustee filed an Objection [ECF 244] to these two Talarchyk fee applications, and the Objection to each was sustained by

2

Order [ECF 250, 251] which denied the applications without prejudice to the filing of amended applications.

Talarchyk filed amended applications for Talarchyk Merrill [ECF 245] and The Talarchyk Firm [ECF 246],[1] the latter seeking fees in the amount of $190,755 together with expenses of $846. Talarchyk Newburgh, LLC, through its member Steven S. Newburgh, filed an Objection [ECF 258] to The Talarchyk Firm's second application [ECF 246], which was sustained by Order [ECF 261] entered September 8, 2014. That Order authorized The Talarchyk Firm to file a second amended fee application within 21 days. No further fee application by The Talarchyk Firm was filed.

The application of Talarchyk Merrill [ECF 245] and a new application [ECF 265] filed September 19, 2014, by Talarchyk for Talarchyk Newburgh were ruled upon by the Court by Order (the "Fee Order") [ECF 270] entered December 8, 2014. Talarchyk filed a Motion (the "Reconsideration Motion") [ECF 271] for reconsideration of the Fee Order on December 21, 2014. The Reconsideration Motion was denied by Order ("Reconsideration Order") [ECF 273] entered January 14, 2015. The Reconsideration Order reiterated the direction to Talarchyk contained in the Fee Order that she deliver to the Court at the evidentiary hearing scheduled for January 30, 2015, and that she file and serve "the entirety of the documents required by the Court's order at [ECF 270], including a complete accounting of all deposits into, and all disbursements from any and all trust accounts that relate to the Debtor's Chapter 11 case." *See* Fee Order at page 10, ¶ 3; Reconsideration Order at page 2, ¶ 3.

On January 28, 2015, Talarchyk filed an Emergency *Ex Parte* Motion (the "Motion to

---

[1] These applications were filed after the hearing on the prior applications [ECF 234, 235] held April 29, 2014, but prior to the entry of the orders [ECF 250, 251] denying them, which was entered May 2, 2014.

Continue") [ECF 280] seeking to continue the scheduled January 30, 2015 hearing. The Motion to Continue and accompanying affidavits describe the severe medical condition of the elderly Debtor's 85-year-old husband and his urgent need for medical procedures to treat his lung cancer. The Debtor represented that she is her husband's sole caregiver and that she wishes to attend the scheduled evidentiary hearing. The Court granted the Motion to Continue in part, cancelling any evidentiary hearing but requiring Talarchyk to appear and to deliver the trust account records [ECF 281].

### Trust Account Records

The Second Talarchyk Merrill Fee Application [ECF 245] represents that the Firm is holding $23,787 in its "fee retainer" account. This is consistent with the Retention Application [ECF 17] in which Talarchyk Merrill disclosed that on or about January 14, 2013, Talarchyk Merrill had received a fee retainer of $23,787 from the Debtor, together with the filing fee of $1,213, aggregating $25,000. The Retention Application recites that Talarchyk Merrill "will retain [the entire amount] of the Retainer in trust during the pendency of this case to be applied to any professional fees, charges and disbursements that remain unpaid at the end of the Chapter 11 Case." [ECF 17, ¶¶ 22-23]. As noted above, the Dismissal Order [ECF 225], which was drafted by Talarchyk, provided for the express retention of jurisdiction by this Court for the award of all professional fees in the case and prohibited the payment of any professional fees except upon Court order.

No orders allowing fees or costs to Talarchyk, Talarchyk Merrill, Talarchyk Newburgh, or The Talarchyk Firm were entered by this Court prior to the Fee Order [ECF 270]. But the Talarchyk Newburgh Application [ECF 265] states that the "Balance remaining in fee retainer account, not yet awarded" is **$2,917**. Since no fees were previously awarded to any of the lawyers or law firms, this

Court asked rhetorically why the balance in the Talarchyk Merrill or Talarchyk Newburgh trust account was not the full retainer of $23,787 which Talarchyk represented would be held in trust until "the end of the Chapter 11 Case"? The difference between these two sums is **$20,870**, which is precisely the amount of fees and costs sought by Talarchyk Merrill in the Second Talarchyk Merrill Fee Application [ECF 245]. By implication, it appeared to the Court that Talarchyk had caused $20,870 to be disbursed from the Talarchyk Merrill trust account without authorization. In furtherance of this Court's statutory obligations under 11 U.S.C. § 330 to consider and rule upon fee applications, as well as the provisions of the Dismissal Order, Talarchyk was directed to account for all trust account transactions related to the Debtor or the Debtor's case.

To summarize: the only issue pending before the Court on January 29, 2015, the date the Recusal Motion was filed, was the direction to Talarchyk to deliver the relevant trust account records on the following day. The Recusal Motion must be considered before any further action can be taken by this Court since, under § 455(a), recusal is required whenever a judge's impartiality "might reasonably be questioned." A judge faced with a recusal motion could, in the judge's discretion, leave the motion to a different judge to decide. But there are no reported cases or accepted principal of law which compels that judge to do so. *In re United States*, 158 F.3d 26, 34 (1st Cir. 1998); *accord, United States v. Heldt*, 668 F.2d 1238, 1271 (D.C. Cir. 1981). Indeed, some case authority states that because there is no provision for the transfer of disqualification motions to another judge, the motion to disqualify "must be decided by the judge whose disqualification is sought." *Cohee v. McDade*, 472 F.Supp.2d 1082, 1084 (S.D. Ill. 2006).

**Effect of Appeal**

On January 27, 2015, Talarchyk filed a Notice of Appeal [ECF 277] which appealed from the Order (the "Fee Order") [ECF 270] which granted in part the fee application [ECF 245] of Talarchyk Merrill and the fee application [ECF 265] of Talarchyk Newburgh; directed an accounting; and set an evidentiary hearing. The Notice of Appeal [ECF 277] also appealed from the Order [ECF 273] denying Talarchyk's Motion [ECF 271] for reconsideration of the Fee Order and from the separately-docketed Order [ECF 274] setting the evidentiary hearing on January 30, 2015.

The district court has jurisdiction over final judgments, orders and decrees of bankruptcy courts under 28 U.S.C. § 158(a)(1) and, "with leave of the [district] court, from other interlocutory orders and decrees" under § 158(a)(3).

Significant case law exists regarding what constitutes a final order in the context of a bankruptcy case. Because a bankruptcy case is often of a protracted nature and involves multiple parties, appellate courts generally have applied a broader pragmatic or flexible definition of finality to bankruptcy appeals. *Barben v. Donovan (In re Donovan)*, 532 F.3d 1134, 1136-37 (11th Cir. 2008). In other words, the "unique nature of bankruptcy procedure dictates that [appellate courts] take a pragmatic approach to finality." *Bonner Mall P'ship v. U.S. Bancorp. Mortg. Co.*, 2 F.3d 899, 903 (9th Cir. 1993). As explained by the Eleventh Circuit in *Martin Brothers Toolmakers, Inc. v. Industrial Development Board of Huntsville (In re Martin Brothers Toolmakers, Inc.)*, 796 F.2d 1435, 1437 (11th Cir. 1986):

> This accommodative approach is vital in the context of bankruptcy. Viewed realistically, a bankruptcy case is simply an aggregation of controversies, many of which would constitute individual lawsuits had a bankruptcy petition never been filed. While the goal of the bankruptcy process is to bring all present and potential contestants together and decide all the claims at the same time, a truly simultaneous resolution is impossible. Each claim represents a variable which must be quantified

> before a dividend is fixed or a workable reorganization plan adopted. Delayed review of any particular claim, especially claims involving key assets of the debtor's estate, would render any distribution or plan purely contingent until completion of appeals after conclusion of the case. Such an approach would be especially devastating in reorganizations, which proceed most smoothly when at least some variables become fixed and operate as the basis for further negotiation.

In recognition of these factors, finality of bankruptcy orders cannot be limited to the last order concluding the bankruptcy case as a whole. *Id.* at 1437.

Consequently, orders that would be treated as interlocutory in ordinary civil litigation may be deemed final under the "flexible finality" approach. In ordinary civil disputes, an order is final only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981). This is still true in the bankruptcy context, but the "litigation" at issue may be an adversary proceeding or a contested matter within the bankruptcy case, rather than the bankruptcy case as a whole itself. *Barben v. Donovan,* 532 F.3d at 1137. Therefore, to be "final" for purposes of a bankruptcy appeal, a bankruptcy court's order must "completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." *Id.* at 1136-37.

Under the Eleventh Circuit's *Barben* standard for finality, there was question in the Court's mind as to whether the Orders [ECF 270, 273, 274] are "final." Each of them contains provisions which require Talarchyk to provide additional information to this Court, *viz.*, the trust account records which will demonstrate whether she kept the Retainer in trust, as she swore she would do [ECF 17, page 21 of 23]. This requirement to keep the Retainer in trust was contained in the Dismissal Order [ECF 225] which Talarchyk drafted and submitted to the Court. As set forth in the discussion above, the Talarchyk Newburgh Fee Application [ECF 265] suggests that more than $20,000 was taken out of Talarchyk's trust account, notwithstanding her prior representations and

Court order.  Until these questions are resolved, the Orders [ECF 270, 273, 274] did not appear to this Court to be "final" under the controlling "flexible finality" standard of *Barben v. Donovan*, 532 F.3d 1134.

On appeal, the District Court concluded that this Court's Orders [ECF 270, 273, 274] were final orders subject to review under 28 U.S.C. § 158, and affirmed those Orders in *Talarchyk v. Olson (In re Sanders)*, Case No. 15-60172-civ-ZLOCH (September 23, 2015) [ECF 16 in the District Court; ECF 301 in the Bankruptcy Court] (the "Affirmance Order").  No reconsideration of or appeal from Judge Zloch's Affirmance Order was sought and the Affirmance Order is now final.  The case is thus now back in this Court to consider the Recusal Motion.

During the pendency of the District Court appeal, this Court was divested of jurisdiction to proceed further on any matters fairly within the ambit of the appeal.  But this Chapter 11 case is dismissed, and there are no issues in the case other than the exercise of the retained jurisdiction provided for in the Dismissal Order [ECF 225].  It would clearly be inappropriate for this Court to proceed on any substantive matter until the Recusal Motion [ECF 290] has been ruled upon.

In these circumstances, the Court concluded that the appropriate action was to defer ruling on the Recusal Motion until such time as it became clear that this Court has jurisdiction over the singular issue remaining to be determined in this case.  Accordingly, by Order [ECF 296] entered February 26, 2015, this Court deferred ruling on the Recusal Motion.  Now that the Affirmance Order has become final, this Court is revested with jurisdiction over this case and it is appropriate to rule on the Recusal Motion.

**Disqualification under 28 U.S.C. § 144**

8

Talarchyk seeks disqualification under 28 U.S.C. § 144, which provides that

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

By its express terms, § 144 applies only to proceedings "in a district court" and is inapplicable to proceedings before a bankruptcy judge.[2] *Dubnoff v. Goldstein,* 385 F.2d. 717, 720 (2nd Cir. 1967); *Ginger v. Cohn,* 255 F.2d 99 (6th Cir. 1958); *Seidel v. Durkin,* 194 B.R. 214, 221 (9th Cir. BAP 1996). This Court has previously addressed this question and concluded that § 144 does not apply to bankruptcy judges. *In re Hussey,* 391 B.R. 911, 918 (Bankr. S.D. Fla. 2008).[3]

Accordingly, to the extent that the Recusal Motion seeks recusal under 28 U.S.C. § 144, it is **DENIED.**

### Recusal standards

### 1. Recusal under 28 U.S.C. § 455(a)

Talarchyk also seeks recusal under 28 U.S.C. § 455 and pursuant to Canons 2 and 3 of the Code of Conduct for United States Judges.

Federal Rule of Bankruptcy Procedure 5004 makes clear that the disqualification of a bankruptcy judge is governed by 28 U.S.C. § 455. Section 455(a) speaks in general terms and

---

[2] Section 144 is similarly inapplicable to federal appellate judges. *Pilla v. American Bar Ass'n,* 542 F.2d 56 (8th Cir. 1976).

[3] The Court is aware of *Infolink Communication Services, Inc. v. Dillworth,* 2011 WL 2580397 (S.D. Fla. 2011) (Moreno, C.J.) cited by Talarchyk. *Infolink* assumes without analysis that § 144 is applicable to bankruptcy judges and holds that the statutory elements were not met. The Court is aware of no case which holds that a bankruptcy judge is required to recuse himself or herself under § 144.

requires the recusal of a federal judge, including a bankruptcy judge, "in any proceeding in which his impartiality might reasonably be questioned," thus requiring recusal not only where the judge has *actual* bias[4] but also where he or she has acted in such a way as to give the appearance of partiality to a reasonable person. *See SCA Services, Inc. v. Morgan*, 557 F.2d 110, 113-14 (7th Cir. 1977). The appearance of impartiality is virtually as important as the fact of impartiality. *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358, 1361 (10th Cir. 1977). It is of no consequence that the judge is not actually biased, inasmuch as § 455 concerns not only fairness to individual litigants but also the public's confidence in the judiciary, which could be irreparably harmed if a case were allowed to proceed before a judge who appears to be tainted. *In re Kensington Intern. Ltd.*, 353 F.3d 211 (3d Cir. 2003); *on remand* 305 B.R. 175 (D. Del. 2004); *opinion after remand* 368 F.3d 289 (3d Cir. 2004).

A judge's rulings and expressions of opinion generally fail to justify recusal. As the Eleventh Circuit has put it, "adverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt." *Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir. 2001). Of course judges hold and express opinions about the litigants and issues that they have formed during court proceedings. But as the Supreme Court succinctly stated in *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966): "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source . . . other than what the judge learned from his participation in the case."

*Grinnell* was decided prior to the enactment of the 1974 amendments which create the current version of § 455(a). In *Liteky v. United States*, 510 U.S. 540 (1994), the Supreme Court

---

[4] By contrast, a showing of actual bias is required under 28 U.S.C. § 144, which by its express terms governs only "any proceeding in a district court."

extended the "extrajudicial source" doctrine in *Grinnell* to recusal under § 455(a). Just prior to his second trial, the criminal defendant in *Liteky* moved to disqualify the judge on the grounds that, during the earlier trial, the judge displayed "impatience, disregard for the defense and animosity" toward the defendant. *Id.* at 542. The Supreme Court rejected the contention that recusal was required:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Id.* (internal citations omitted). The Court accordingly concludes that the prior rulings in this case, which have now been upheld on appeal, cannot constitute a basis for recusal.

### 2.  Recusal under 28 U.S.C. § 455(b)

Section 455(b)(1)[5] requires recusal "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding" which is "proved by compelling evidence." *Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996). Disqualification under § 455(b) requires that a litigant present evidence of a "negative bias or

---

[5]Section 455(b)(1) is the only subsection of § 455(b) which is remotely implicated by the Recusal Motion. The other subsections of § 455(b) address prior association with the matter as a private practitioner or witness; prior association with the matter as a governmental employee; financial interest in the matter; matters in which a spouse or family member is a party to the proceeding or an officer, director or trustee of a party; matters in which a spouse or family member is a lawyer in the proceeding; matters in which a spouse or family member is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; and matters in which a judge, spouse or family member is likely to be a material witness. None of these subsections have relevance to the analysis of the Recusal Motion.

prejudice [which] must be grounded in some personal animus or malice that the judge harbors against him." *United States v. Balistrieri*, 779 F.2d 1191, 1201 (7th Cir. 1985). The standard for finding actual bias is objective, and that "it is with reference to the 'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical and suspicious person' that the objective standard is currently established." *Andrade v. Chojnacki*, 338 F.3d 448, 458 (5th Cir. 2003) (quoting *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)).

As with recusal under § 455(a), recusal under § 455(b) requires a showing of bias or partiality as to a party, not as to counsel. "[T]he only claim of bias to be considered is that against a party." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987) (citing *United States v. Burt*, 765 F.2d 1364, 1368 (9th Cir. 1985); *Gilbert v. City of Little Rock, Ark.*, 722 F.2d 1390, 1398 (8th Cir. 1983), *cert. denied*, 466 U.S. 972 (1984). The Recusal Motion raises only an allegation of partiality against Talarchyk, not her client. Such an allegation is insufficient to require recusal. For example, in *Gilbert*, the Eighth Circuit has held that "a controversy between a trial judge and an attorney for parties to an action would not require disqualification of the judge in absence of showing of bias or personal prejudice to the parties." *Gilbert*, 722 F.2d at 1399. Similarly, the Federal Circuit has found that "[t]o warrant recusal, bias or prejudice must be directed against a party and bias exhibited against an attorney will only merit recusal when it results in material and identifiable harm to that party's case." *Baldwin Hardware Corp. v. Franksu Enterprise Corp.*, 78 F.3d 550, 557-58 (Fed. Cir.), *cert. denied*, 519 U.S. 949 (1996).

Under these standards, far more rancor between a judge and an attorney than is alleged here has been found to be insufficient to require recusal. For instance, the Tenth Circuit found no basis for disqualification "merely because a litigant sues or threatens to sue him." *United States v.*

*Grismore*, 564 F.2d 929, 933 (10th Cir. 1977), *cert. denied*, 435 U.S. 954 (1978). The Fourth Circuit found no basis for recusal when a district judge had called a lawyer a "son-of-a-bitch" and a "wise-ass lawyer." *In re Beard*, 811 F.2d 818, 830 (4th Cir. 1987). The First Circuit likewise found no basis for recusal where a district judge had disparaged an attorney's testimony, called him an "untrustworthy manipulator," called his partner a "name dropper," and described their conduct as "dirty work." *In re Cooper*, 821 F.2d 833, 841 (1st Cir. 1987). The First Circuit explained that the district court's attitude toward the attorney did not reasonably call into question the judge's ability to rule impartially as to the attorney's client. *Id.*

The Recusal Motion asserts that the Court should recuse because Talarchyk has been involved as counsel in litigation in which the Court's husband, G. Steven Fender, was counsel to an opposing party. Talarchyk asserts that the Court is "hostile to [Talarchyk] as a potential competitor to Mr. Fender." [Recusal Motion at p. 3]. The Recusal Motion asserts that the Court demonstrated an "angry attitude" toward Talarchyk at a hearing held on June 5, 2014, and that the Fee Order constituted "payback" or "retaliation" for interactions between my husband and Talarchyk in that other case, all of which allegedly occurred between April and August 2014.

Talarchyk cites no authority for the proposition that a federal judge must recuse him- or herself because a judge's family member is "a potential competitor" to a lawyer appearing before that judge, or because a family member has been adverse to a lawyer in a highly contentious case. There simply is no basis for the recusal of a federal judge on such grounds. Recusal is not required here under 28 U.S.C. § 455(b).

### 3. Code of Conduct for United States Judges

In a single paragraph, Talarchyk cites to the provisions of Canon 2A of the Code of Conduct for United States Judges which provides that a judge "should act at all times in a manner which promotes public confidence in the integrity and impartiality of the judiciary," and to the provisions of Canon 3C, which essentially track the provisions of 28 U.S.C. § 455(b). The Court concludes that the discussions of §§ 455(a) and (b) above sufficiently deal with the hortatory provisions of the applicable Canons.

### 4. Notification of the possibility of sanctions

The third decretal paragraph of the Fee Order included the following sentence: "The Court will also consider at that hearing[6] whether the Court should initiate disciplinary proceedings pursuant to Local Rule 2090-2(B) in the event it is determined that unauthorized trust account disbursements were made in this case." The Recusal Motion asserts (page 2, ¶ 6) that this provision "threatens sanctions and referrals for disciplinary proceedings the Florida Bar [*sic.*]." The Fee Order made no mention of disciplinary proceedings by The Florida Bar, and this Court has made no referral of this case to The Florida Bar. Indeed, the Court has to date no basis for making any such referral: although the various fee applications call into question whether Talarchyk improperly withdrew funds from her attorney trust accounts, Talarchyk has to date not provided the accounting mandated in the Fee Order. It is entirely possible that the trust accounting records will disclose no impropriety in the handling of trust funds; the Court has certainly made no determination that unauthorized trust account disbursements have been made in this case.

Even if the Court had made a referral to The Florida Bar, which it has not, such a referral would not constitute the basis for recusal. Judges do not demonstrate possible bias or prejudice

---

[6]Scheduled for January 30, 2015.

when they discharge their obligation to alert disciplinary authorities to possible unethical conduct. *United States v. Mendoza*, 468 F.3d 1256 (10th Cir. 2006).[7] Thus, while no disciplinary referral has been made, and no basis currently exists for any such referral, the making of a disciplinary referral cannot form the basis for recusal.

### 5. Timeliness of Recusal Motion

A motion for disqualification must be brought "at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." *Travelers Ins. Co. v. Liljeberg Enters.*, 38 F.3d 1404, 1410 (5th Cir. 1994). *See also Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987). *Accord, Pontarelli v. Stone*, 978 F.2d 773, 775 (1st Cir. 1992); *United States v. Barnes,* 909 F.2d 1059, 1071 (7th Cir. 1990); *United States v. Barrett,* 111 F.3d 947, 951-52 (D.C. Cir. 1997); *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1232 (7th Cir. 1988). "[A] party having information that raises a possible ground for disqualification cannot wait until after an unfavorable judgment before bringing the information to the court's attention." *Nordbrock v. United States*, 2 F. App'x 779, 779 (9th Cir. 2001). The Fifth Circuit has said that "[t]he most egregious delay – the closest thing to per se untimeliness – occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal." *United States v. Vadner*, 160 F.3d 263, 264 (5th Cir. 1998). *Accord, Rabushka v. Crane Co.*, 122 F.3d 559, 566 (8th Cir. 1997), *cert. denied,* 523 U.S. 1040 (1998); *United States v. Rogers*, 119 F.3d 1377, 1382 (9th Cir. 1997); *United States v. Barrett,* 111 F.3d at 952; *United States v. Stenzel*, 49 F.3d 658, 661 (10th Cir. 1995); *United States v. Owens*,

---

[7]Rule 4-8.3 of The Rules Regulating The Florida Bar requires a lawyer who becomes aware of certain professional misconduct by another lawyer to inform the appropriate professional authority.

902 F.2d 1154, 1156 (4th Cir. 1990).

The timing of the Recusal Motion suggests exactly this sort of egregious delay. Based upon her assertions, Talarchyk knew of all of the relevant facts giving rise to her recusal claim no later than August 2014. But she waited until January 29, 2015 – the day before the scheduled hearing at which she was required to turn over her trust account records – to file the Recusal Motion. On the face of things, the Recusal Motion appears to be little more than an effort to avoid disclosing those trust account records. The Court declines to speculate on why Talarchyk was so very anxious to avoid disclosure.

The Recusal Motion is untimely. For that reason, and for the other reasons set forth above, the Recusal Motion [ECF 290] is **DENIED.**

###

Copies to all parties in interest.